No. 01-188

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 122

STATE OF MONTANA,

        Plaintiff/Respondent,

  v.

DAVID WAYNE NELSON,

        Defendant/Appellant.


APPEAL FROM:    District Court of the Twenty-First Judicial District,
                     In and for the County of Ravalli,
                     The Honorable Jeffrey Langton, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Kristina Guest, Assistant Appellate Defender, Helena, Montana

        For Respondent:

                Mike McGrath, Montana Attorney General, Jim Wheelis, Assistant
           Attorney General, Helena, Montana; George H. Corn, Ravalli County
    Attorney, Geoffrey T. Mahar, Deputy County Attorney, Hamilton, Montana


Submitted on Briefs: December 28, 2001

Decided:  June 11, 2002

Filed:

_____
                   Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     On March 9, 1999, David Wayne Nelson (Nelson) was charged in the Twenty-First Judicial District Court with five felony offenses.  As a result of a plea bargain, Nelson's accomplice testified for the State at trial.  During cross examination of Nelson's accomplice, the District Court prevented questioning  about charges allegedly filed against the accomplice in another county.  At the close of trial and over Nelson's objection, the District Court instructed the jury that it could consider testimony showing fabrication by Nelson as a circumstance tending to prove consciousness of guilt.

¶2     On November 10, 1999, the jury convicted Nelson of Aggravated Kidnaping, Robbery, and two counts of Accountability for Felony Assault.  On the Aggravated Kidnaping count, the District Court sentenced Nelson to twenty years in the Montana State Prison (MSP) with ten years suspended, even though it recognized no one had been seriously injured in the incident.  Nelson appeals the District Court's limitation on cross-examination of his accomplice, the jury instruction on fabrication, and the Aggravated Kidnaping sentence. We affirm in part, and remand for resentencing.

¶3     We restate the issues as follows:

        1.  Whether the District Court abused its discretion when it restricted the scope of Nelson's cross-examination of his accomplice;

        2.   Whether the District Court's instruction to the jury on "fabrication by the defendant" prejudiced Nelson; and

3. Whether the District Court erred when it sentenced Nelson to the maximum sentence for Aggravated Kidnaping, even though the evidence established the victim had been released in a safe location without serious injury.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The charges brought against Nelson in this matter stemmed from events occurring on the evening of December 13, 1998, at the home shared by Jim Frischmon (Jim) and Shari Wolff (Shari). Those involved in the events of December 13 were Jim, Shari, Nelson's nephew Fred, and Nelson himself. Although fascinating and somewhat bizarre, depending upon whose version of events one believes, the detailed sequence of events of December 13 as told by Jim, Shari, Fred and Nelson are largely immaterial to our decision here, as Nelson has not challenged the sufficiency of the evidence to support his conviction. Thus, we limit our description of the evening's events to those having direct relevance to the issues presented on appeal.

¶5 Jim, Shari and Fred testified that, while in Jim and Shari's home, Nelson grabbed Shari, wrapped wire around her wrists to restrain her, and threw her to the floor. Shari ostensibly struggled, receiving rug burns, scrapes and bruises. While Nelson struggled with Shari, Fred held a gun to Jim, who was wheel-chair bound. Further, according to the three witnesses, Nelson then tried to extort money from both Jim and Shari. Ultimately, Nelson let Shari get up from the floor, and although she remained bound for a period of time while the four talked, Fred eventually untied her. Before leaving the house with Fred, Nelson took $70 of Jim's money. Jim and Shari called the police after Nelson and Fred left, and related these and other details of the evening to a detective.

3

¶6    Nelson, upon hearing the police were looking for him, voluntarily went to the police and gave a statement. He denied all of Jim and Shari's allegations, claiming he and Fred were at Jim and Shari's watching TV that evening, and talking with Jim about his anti-government views. According to Nelson, after Jim said he would not want any law enforcement persons in his home, Nelson ostensibly threatened to call the police on Jim, surmising Jim must have something to hide. In turn, Jim then threatened to call the police on Nelson. Nelson believed his initial threat must have prompted what Nelson called Jim and Shari's "wild" version of events. In sum, Nelson denied there was any restraint of Shari, any robbery, or any assault of any kind.

¶7    Fred, Nelson's nephew, testified at trial to "facts" similar to those offered by Jim and Shari. He also related that, before they went into Jim and Shari's home that night, Nelson said he was desperate for money, and that he intended to "get rid of Jim," force Shari to clean out their bank accounts, and then "get rid of Shari." He also claimed Nelson then showed him a 9-millimeter weapon he had in his possession. It was undisputed that Fred ultimately testified to these and the evening's other events at trial, pursuant to a plea bargain.

¶8    At the close of trial, the jury found Nelson guilty of Aggravated Kidnaping, Robbery, and two counts of Accountability for Felony Assault. During the sentencing hearing, the District Court sentenced Nelson to MSP for twenty years with ten suspended for Aggravated Kidnaping, ten years with no time suspended for Robbery, and ten years for each Accountability for Felony Assault count. The court directed that the Robbery and Felony Assault sentences run concurrently with one another, but consecutive to the twenty-year term

4

for Aggravated Kidnaping, for a total sentence of thirty years. Although the court was silent as to suspending any time on the Felony Assault counts, when summarizing the sentence, the court stated that fifteen years of the total thirty-year sentence were suspended. In its written judgment, the District Court imposed the same net result (thirty years with fifteen suspended); however, the court added that on each Felony Assault count, five years were suspended, and it also directed the Robbery sentence to run concurrent to the Aggravated Kidnaping, rather than consecutively as it orally pronounced at the sentencing hearing. We note that when the written and oral sentences are inconsistent, the oral sentence controls. *See State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9, ¶ 40.

## STANDARDS OF REVIEW

¶9      The standard of review of discretionary trial court rulings in criminal cases is whether the trial court abused its discretion. *State v. Flores*, 1998 MT 328, ¶ 27, 292 Mont. 255, ¶ 27, 974 P.2d 124, ¶ 27 (citations omitted). *See also, State v. Stewart* (1992), 253 Mont. 475, 479, 833 P.2d 1085, 1087 (admissibility of evidence is within the sound discretion of the trial court and will not be reversed absent abuse of discretion). The standard of review of jury instructions in criminal cases is whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Davis*, 2000 MT 199, ¶ 18, 300 Mont. 458, ¶ 18, 5 P.3d 547, ¶ 18 (citing *State v. Johnson*, 1998 MT 289, ¶ 28, 291 Mont. 501, ¶ 28, 969 P.2d 925, ¶ 28). Finally, our review of a criminal sentence imposed by a district court is limited to questions of legality and confined to whether the sentence is within the parameters

5

provided by statute. *State v. Muhammad*, 2002 MT 47, ¶ 18, 309 Mont. 1, ¶ 18, 43 P.3d 318, ¶ 18 (citation omitted).

## DISCUSSION

### Issue 1

¶10 **Did the District Court abuse its discretion when it restricted the scope of Nelson's cross-examination of his accomplice?**

¶11 Following a plea arrangement with Ravalli County prosecutor, Fred agreed to testify for the State at Nelson's trial. During cross-examination of Fred, Nelson's counsel questioned him about why he left Dillon and came to live in Hamilton in the Fall of 1998. After Fred explained that he had an argument with his mother and that he could not live with her anymore, Nelson's counsel asked a series of questions, implying that criminal charges had been brought against Fred in Dillon/Beaverhead County, and that this was the real reason that Fred had left Dillon.

¶12 At this point the State objected, arguing that Nelson was attempting to impeach Fred with prior bad acts. Outside the presence of the jury, Nelson's counsel explained that he wanted to cross-examine Fred about prior charges in Beaverhead County that allegedly had been dismissed after Fred made a deal to testify against his co-defendants, just as he did here. With this line of questioning, Nelson's counsel sought not only to impeach Fred on why he left Dillon, but also to demonstrate a pattern of testifying against co-defendants, arguing it reflected on Fred's propensity to be untruthful in his testimony against Nelson. However, Nelson's counsel could not make an offer of proof that Fred had actually been charged in

6

Dillon. The District Court ruled that information about Fred's alleged prior charges was inadmissible under Rule 403, M.R.Evid., noting that the connection was too tenuous, especially given that it was unknown if formal charges were ever filed. Nelson appeals from this ruling.

¶13 The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse of discretion. *State v. Milton* (1996), 280 Mont. 142, 145, 930 P.2d 28, 30 (citation omitted). Moreover, under Rule 611, M.R.Evid., it is within the district court's discretion to exercise reasonable control over the mode and order of interrogating witnesses. *State v. Gommenginger* (1990), 242 Mont. 265, 274, 790 P.2d 455, 461. *See also*, *State v. McNatt* (1993), 257 Mont. 468, 473, 849 P.2d 1050, 1054 ("[b]alanced against [the] right of confrontation is Rule 611(a), M.R.Evid"). "However, the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the Defendant." *Gommenginger*, 242 Mont. at 274, 790 P.2d at 461 (citation omitted). *See also, McNatt,* 257 Mont. at 474, 849 P.2d at 1054. Thus, we must determine if Nelson was afforded a minimum threshold of inquiry during his cross-examination of Fred.

¶14 The Confrontation Clause of the Sixth Amendment guarantees a defendant in a criminal prosecution the right "to be confronted with the witness against him." *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 682-83. The "main and essential purpose of confrontation is to secure for the opponent the opportunity of

cross-examination," and "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Van Arsdall*, 475 U.S. at 678-79 (citing *Davis v. Alaska* (1974), 415 U.S. 308, 315-16 and 316-17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353-54) (emphasis omitted).

¶15 Even though a defendant's right to confront and cross-examine an adverse witness is grounded in the Sixth Amendment to the United States Constitution, and Article II, Section 24, of the Montana Constitution, a trial court has broad discretion to limit the scope of cross-examination to those issues it determines are relevant to the trial. *State v. Beavers*, 1999 MT 260, ¶ 36, 296 Mont. 340, ¶ 36, 987 P.2d 371, ¶ 36 (citing *State v. Sullivan* (1994), 266 Mont. 313, 323, 880 P.2d 829, 836). Moreover, limiting the scope of cross-examination does not necessarily violate a defendant's right to confront an adverse witness. *Beavers*, ¶ 36 (citation omitted) (when defendant was prevented from cross-examining arresting officer about possible alternative charges, defendant's right to confront and cross-examine an adverse witness was not violated, since it was the prosecutor's function to charge the defendant, not the officer's). *See also, Sullivan*, 266 Mont. at 323, 880 P.2d at 836 (trial court properly exercised its discretion by limiting cross-examination of witness to the relevant issues of credibility, and not matters which allegedly occurred years before the events in question).

¶16 In support of his contention that he was denied his constitutional right to confront his accusers, Nelson cites *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (notwithstanding Alaska's statute protecting the anonymity of juvenile offenders, defense

should have been allowed to cross-examine witness on his vulnerable status as juvenile probationer in determining if he was under any undue influence to testify); and *Alford v. United States* (1931), 282 U.S. 687, 693, 51 S.Ct. 218, 220, 75 L.Ed. 624, 628-29 (defense should have been allowed to question witness as to whether he was in custody because defendant was entitled to show by cross-examination that the witness's testimony may have been "affected by fear or favor growing out of his detention").  However, both *Davis* and *Alford* are distinguishable from the instant action.

¶17    Unlike *Davis* and *Alford*, where direct connections between the prosecuting authorities and the witness's prior conduct was argued (i.e., probationer status; in custody with possibility of charge), in this case, Nelson sought to introduce alleged evidence about plea negotiations between Fred and a prosecutor from a different city/county altogether that occurred sometime before Fred moved to Hamilton and the facts giving rise to this case occurred.  Moreover, nothing in the record established that Fred was ever charged with an offense (other than an MIP), or held in custody on such a charge, in Beaverhead County.  Significantly, the prosecutor for Ravalli County had no knowledge of any charges against Fred in Beaverhead County.  Thus, while the holdings in *Davis* and *Alford* were premised on the witness's potential for bias or prejudice stemming from his interest in receiving leniency on other charges from the prosecuting office, in the instant case, nothing in the record indicates that Ravalli County offered any plea arrangements to Fred based on alleged criminal activity in Beaverhead County.

9

¶18 Moreover, Nelson was given wide latitude when cross-examining Fred about the plea arrangement he made in this case with the Ravalli County prosecutor, and a copy of the plea agreement was entered into evidence. Fred explained that in exchange for his testimony, the State would permit him to plead guilty to one Felony Assault charge, with the recommendation Fred be given a five-year deferred sentence. In addition, the State would dismiss the second Felony Assault count and the Kidnaping and Robbery charges. During cross-examination, defense counsel made it clear that Fred was offered a plea bargain prior to his statement to law enforcement in March, 1999, and that the deal with the prosecutor was conditioned on his testimony at trial. Finally, defense counsel elicited several admissions from Fred concerning inconsistencies between his prior statements and other witness testimony, as well as prior lies he told law enforcement during the investigation.

¶19 The Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *State v. Jenkins*, 2001 MT 79, ¶ 19, 305 Mont. 95, ¶ 19, 23 P.3d 201, ¶ 19 (citing *United States v. Owens* (1988), 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951, 957) (emphasis in original); and *Van Arsdall*, 475 U.S. at 679 (citation omitted). We conclude Nelson was afforded the constitutionally required level of inquiry during his cross-examination of Fred. Accordingly, we conclude the District Court did not violate Nelson's rights under either the Sixth Amendment, or Article II, Section 24 of Montana's Constitution, nor did it abuse its discretion when it prevented Nelson from cross-examining Fred about alleged, but unsubstantiated, charges in Beaverhead County.

¶20 **Did the District Court's instruction to the jury on "fabrication by the defendant" prejudice Nelson?**

¶21 Over Nelson's objection, the District Court provided the jury with the following "fabrication instruction" (Instruction No. 14):

**Fabrication by the Defendant**

If you are satisfied that the crime(s) charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, fabrication by the defendant. This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given such circumstance and significance if any, to be attached to it, are matters for the jury to determine.

¶22 On appeal, Nelson argues this instruction allowed improper comment on his credibility by injecting argument into the court's instructions. In support of this contention, Nelson cites *State v. Hall*, 1999 MT 297, 297 Mont. 111, 991 P.2d 929, where we held that a nearly identical instruction (referencing "flight" in place of "fabrication") was an unnecessary comment on the evidence and should not be given. The same rationale we applied to the "flight instruction" in *Hall*, also applies to the "fabrication instruction" given here.

¶23 We agree with the Ninth Circuit Model Jury Instruction Committee's recommendation that an instruction concerning false exculpatory statements should not be given, and if the evidence permits such an adverse inference on statements by the defendant, counsel should be permitted to make arguments accordingly. *See* Ninth Circuit Manual of Model Criminal Jury Instructions (West 1997), at 59. Moreover, general instructions "on credibility of

11

witnesses should in most instances suffice, obviating the need for more specific instructions."

 Ninth Circuit Manual, at 55.

¶24     In the instant case, the court provided just such a general instruction, which advised the jury on how to assess the credibility of the witnesses.  Instruction No. 4 provided in part:

> If you believe that any witness has willfully testified falsely as to any material matter in the case, you must reject such of his/her testimony as you believe to have been false and you have the right to view the rest of his/her testimony with distrust and in your discretion disregard it, unless, after examination of all the evidence, you find such testimony worthy of belief.
> . . . .

There is little probative value in giving a "fabrication instruction" when the jury is properly instructed on assessment of witness credibility.  When evidence of false exculpatory statements by a defendant is properly admitted, the better practice is to reserve comment to counsel, rather than the trial court.  Thus, we conclude that Instruction No. 14 was an improper comment on the evidence.  However, that conclusion does not dispose of the issue before us.

¶25     In *Hall* we concluded that the "significance of a defendant's flight should be left to [counsel's] argument." *Hall*, ¶ 48.  However, we held there was no reversible error in giving the instruction, since sufficient evidence of flight was presented and "the instruction included the qualification that such flight is not by itself sufficient evidence of guilt but is only one circumstance to be considered by the jury." *Hall*, ¶ 47.  We determine the same reasoning applies here, and conclude that while "fabrication instructions" are improper comments on the evidence, Nelson was not prejudiced by the giving of Instruction No. 14.

12

¶26    Section 46-20-701(1), MCA, provides that "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial."  Although Nelson denied any involvement in the crimes, his version of the events was in stark contrast to that of Fred, Jim, and Shari, and as sole judges of witness credibility, it was left to the jury to choose between the two vastly divergent accounts of the events of December 13, 1998.  " 'It is within the province of the finder of fact to weigh the evidence presented and determine the credibility of the witnesses; in the event of conflicting evidence on factual issues, the trier of fact determines which will prevail.' " *State v. Weitzel*, 2000 MT 86, ¶ 20, 299 Mont. 192, ¶ 20, 998 P.2d 1154, ¶ 20 (quoting *State v. Johnson*, 1998 MT 289, ¶ 41, 291 Mont. 501, ¶ 41, 969 P.2d 925, ¶ 41).  Therefore, notwithstanding Instruction No. 14 and in light of Instruction No. 4, the jury was free to reject Nelson's story and was entitled to accept all or part of the other key witnesses' testimony.  Moreover, Instruction No. 14 included the same qualification language -- evidence of fabrication "is not sufficient of itself to prove guilt" -- we relied upon in *Hall*.

¶27    Accordingly, we conclude Nelson was not prejudiced by the giving of Instruction No. 14 and thus the District Court did not commit reversible error.  We emphasize however, that such an instruction is an unnecessary comment on the evidence and its use in future trials is expressly disapproved.

### Issue 3

¶28    **Did the District Court err when it sentenced Nelson to the maximum sentence for Aggravated Kidnaping, although evidence established the victim had been released in a safe location without serious injury?**

13

¶29    Section 45-5-303(2), MCA, provides that if the defendant in an Aggravated Kidnaping case "voluntarily released the victim alive, in a safe place, and with no serious bodily injury," he or she shall be imprisoned for not less than two years or more than ten years and may be fined up to $50,000.  Under the facts as set forth above, this statutory provision is clearly applicable.

¶30    The District Court sentenced Nelson to twenty years with ten years suspended, even though both victims testified at trial that Shari was released in her home before Nelson and Fred left.  Moreover, during sentencing, the District Court noted it was "mindful that [Nelson] terminated [his] involvement in these crimes before someone was seriously physically injured," and that neither victim was "seriously injured in a physical way."

¶31    The State concedes that under the facts of this case, the District Court erred in sentencing Nelson to more than the ten year maximum.  We therefore remand this matter to the District Court for resentencing under § 45-5-303(2), MCA.  Upon remand, the District Court may also address any inconsistency between the written and oral judgments as noted in ¶ 8 of this Opinion.

¶32    Affirmed in part, and remanded for resentencing.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON

/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER