No. 03-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 124

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

ROBERT DARON RIGGS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                      In and for the County of Gallatin, Cause No. DC 2001-112
                      The Honorable Loren Tucker, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        William F. Hooks, Attorney at Law, Helena, Montana

        For Respondent:

        Honorable Mike McGrath, Montana Attorney General, John Paulson,
        Assistant Attorney General, Helena, Montana; Marty Lambert, Gallatin
        County Attorney, Ashley Harrington, Deputy County Attorney, Bozeman,
        Montana

Submitted on Briefs:  December 4, 2003

Decided:  May 17, 2005

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Robert Riggs (Riggs) appeals the judgment and sentence entered in the Eighteenth Judicial District Court, Gallatin County, following his conviction by a jury. We affirm.

¶2 We address the following issue on appeal:

¶3 1. Did the District Court abuse its discretion by limiting the testimony of Riggs' expert witness and by excluding the expert from the courtroom during the victims' testimony?

¶4 2. Did the District Court abuse its discretion by allowing the State's expert to testify and by limiting the defense's ability to cross-examine her?

¶5 3. Did the District Court abuse its discretion by denying Riggs' motion for severance?

¶6 4. Did the District Court fail to ensure Riggs' presence at all critical stages of the trial?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7 On May 21, 2001, the Gallatin County Attorney filed an Information charging Riggs with four counts of sexual abuse involving four young girls. Count 1 alleged that Riggs had committed sexual assault, in violation of § 45-5-502, MCA, on or about September 25, 1999, by subjecting D.M. to sexual contact by rubbing her genital area with his hand. Count 2 alleged that Riggs committed incest, in violation of § 45-5-507, MCA, from September 1999 to April 2001, by having sexual contact with D.C., his step-daughter, by touching her breasts and genital area. Count 3 alleged that Riggs committed sexual intercourse without consent, in violation of § 45-5-503, MCA, from September 2000 through March 2001, by subjecting

2

S.M. to non-consensual sexual intercourse by digitally penetrating S.M.'s genitals. Count 4 alleged that Riggs committed sexual assault, in violation of § 45-5-502, MCA, in March 2001, by subjecting M.J. to sexual contact by touching M.J.'s breasts. Count 4 was later amended to allege that the offense occurred in November 2000.

¶8 On October 11, 2001, Riggs filed a motion to dismiss several of the charges for lack of probable cause and to sever the charges. The State filed a response, Riggs replied thereto, and on November 9, 2001, the District Court conducted a hearing on the motion. Following the hearing, the District Court denied the motion.

¶9 On February 25, 2002, the State filed a motion *in limine* to prevent Riggs from offering the expert testimony of Dr. Sarah Baxter for the purpose of questioning the credibility of the complaining witnesses. The District Court heard and granted the State's motion on March 4, 2002.

¶10 The trial concluded on March 8, 2002, when the jury returned verdicts of guilty as to all four charges. On November 15, 2002, the District Court sentenced Riggs to a term of twenty-four years at the state prison, followed by a suspended term of twenty-five years.

¶11 The jury heard testimony which tended to substantiate the following findings. On September 25, 1999, D.M. went to the Riggs' home to play with Riggs' step-daughters and to sleep over until the next morning. D.M. was ten years old at the time and best friends with the step-daughters, who are triplets, the same age as D.M. During the evening, D.M. fell asleep on the living-room floor while watching a video and Riggs carried her into a bedroom.

3

Later than night, D.M. awoke when she felt someone touching her. She found Riggs sitting on her bed with his hand inside her underwear, trying to insert his finger into her vagina.

¶12 Riggs left a few moments later, and D.M. began crying. Riggs' wife put D.M. into one of the other bedrooms to sleep with one of the triplets.

¶13 D.C. is Riggs' step-daughter. When D.C. was in the third or fourth grade, Riggs began molesting her by putting his hand into her panties and touching and rubbing her vaginal area. Riggs also put his hand under her clothing and touched her breasts. D.C. testified that the abuse happened four to six times and ended about the time she finished fifth grade.

¶14 In early November 2000, M.J., another young girlfriend of the triplets, spent the night at Riggs' home watching movies on television. During the movies, Riggs was sitting on the couch next to M.J., who was in her pajamas. Riggs began touching M.J. by putting his hand up her pajama shirt and onto her breast. The touching continued until the end of the movie. M.J. was frightened and remained quiet while Riggs was touching her.

¶15 S.M., another girlfriend of the triplets, also spent the night at Riggs' home in November 2000. While Riggs and S.M. were sitting on the couch watching movies, Riggs put his hand up S.M.'s shirt and underneath her brassiere. S.M. asked Riggs to stop, but he would not. Riggs then unzipped S.M.'s pants, stuck his hand into her pants, and put his finger inside her. Riggs continued the touching throughout the movie and then warned S.M. not to tell anyone. S.M. testified that Riggs continued the sexual abuse the next weekend and

4

described three more instances of molestation, including digital penetration and forcing S.M. to touch Riggs' penis with her hand, the last incident occurring in March 2001.

¶16    Additional facts will be discussed where relevant.

**DISCUSSION**

¶17    ***1. Did the District Court abuse its discretion by limiting the testimony of Riggs' expert witness and by excluding the expert from the courtroom during the victims' testimony?***

¶18    This Court has often observed that a district court is vested with broad discretion in ruling on the admissibility of expert testimony, and without a showing of abuse of discretion, the district court's ruling will not be disturbed on appeal. *State v. Crawford*, 2003 MT 118, ¶ 30, 315 Mont. 480, ¶ 30, 68 P.3d 848, ¶ 30; *State v. Hocevar*, 2000 MT 157, ¶ 54, 300 Mont. 167, ¶ 54, 7 P.3d 329, ¶ 54. A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *State v. Weldele*, 2003 MT 117, ¶ 72, 315 Mont. 452, ¶ 72, 69 P.3d 1162, ¶ 72.

¶19    Riggs argues that the District Court ruled in such a way that the State was able to bolster the credibility of its complaining witnesses with expert testimony, while the defense was barred from attacking their credibility with expert testimony, and that this violated Riggs' rights to the effective assistance of counsel, to due process, and to present his defense.

¶20    As a factual matter, this claim is erroneous. The record clearly reflects that the District Court prohibited the defense from offering expert testimony on the subject of the complaining witnesses' credibility on the specific grounds that the State would not be

5

offering such testimony, either. The record further reflects that the State in fact did not offer expert testimony on the credibility of its witnesses, but only as rebuttal to the defense's expert testimony which criticized the interview techniques employed during the investigation. The defense was put at no disadvantage in this regard.

¶21     In *State v. Geyman* (1986), 224 Mont. 194, 729 P.2d 475, we held that expert testimony is admissible for the purpose of helping the jury to assess the credibility of a child sexual assault complainant, *Geyman*, 224 Mont. at 200, 729 P.2d at 479, a narrow exception to the general rule that judgment as to the credibility of witnesses is the exclusive province of the jury in criminal trials, *Geyman*, 224 Mont. at 196-97, 729 P.2d at 477. In carving out this exception, we reasoned that an adult's reaction to being sexually assaulted is likely to be within reach of the jury's empathic imagination, so as to enable the jury to assess the complainant's truthfulness. A child's emotional reactions to such abuse, on the other hand, especially given the circumstances in which the child may find herself, and the familial relation that she may have to the alleged abuser, are likely to be outside the ken of the jury, which may find those reactions mystifying without the guidance of expert testimony. *Geyman*, 224 Mont. at 196-201, 729 P.2d at 477-80.

¶22     Having affirmed *Geyman* in *State v. French* (1988), 233 Mont. 364, 760 P.2d 86, in *State v. Harris* (1991), 247 Mont. 405, 808 P.2d 453, we restated the rule as follows:

> In cases involving sexual abuse of a minor child, we will allow expert testimony on the credibility of the alleged victim. This exception applies, however, only when the victim testifies at trial, and credibility is brought into question.

*Harris*, 247 Mont. at 410, 808 P.2d at 455 (citations omitted).

¶23    Riggs has entirely failed to show how the District Court's rulings in this regard, which resulted in neither party's being able to offer expert testimony on the subject of the complaining witnesses' credibility, unfairly prejudiced him in the presentation of his defense.

¶24    On the other hand, the District Court permitted Riggs to present extensive expert testimony critical of the interviewing techniques employed in the investigation. As part of her preparation for giving this testimony, Dr. Sarah Baxter, the defense's expert, was provided with the entire police file on the investigation, and prepared a full report thereon. The District Court did not, however, permit Dr. Baxter to listen to the testimony of the complaining witnesses, reasoning that to do so would only be useful preparation for credibility testimony--testimony which had been prohibited by the court *in limine*. Given the general preference, expressed in Rule 615, M.R.Evid., for excluding witnesses, whether lay or expert, from the courtroom, we hold that the District Court did not abuse its discretion in excluding Dr. Baxter.

¶25    ***2. Did the District Court abuse its discretion by allowing the State's expert to testify and by limiting the defense's ability to cross-examine her?***

¶26    Riggs also argues that the District Court erred in allowing the State's expert witness, Dr. Eugenia Bellante, to testify regarding the interview techniques employed in the investigation. Specifically, Riggs invites us to reconsider our holding in *State v. Whitlow* (1997), 285 Mont. 430, 949 P.2d 239, that an expert witness who previously served one of

the complaining witnesses as a therapist is not thereby disqualified, on objectivity and neutrality grounds, from testifying. We decline his invitation.

¶27   In *Whitlow*, we affirmed the three-part test, set forth in *State v. Scheffelman* (1991), 250 Mont. 334, 820 P.2d 1293, for whether an expert witness may testify as an expert on child sexual abuse in a given case. These factors are: (1) the expert must have extensive first-hand experience with sexually abused and non-sexually abused children; (2) the expert must have a thorough and up-to-date knowledge of the professional literature on child sexual abuse; and (3) the expert must have objectivity and neutrality about individual cases as required of other experts. The State called the expert in that case to testify regarding the credibility of the witness whom she had previously served as a therapist. We rejected Whitlow's argument that this disqualified her under part three of the test--that she could not be objective and neutral about the case *sub judice*.

¶28   Here, the case is even stronger for allowing the State's expert to testify. Dr. Bellante was called, not to opine on the credibility of the complainants, as was the State's expert in *Whitlow*, but to testify regarding the interviewing techniques applied in the investigation. Despite the obvious danger that the therapeutic relationship may compromise the therapist's objectivity regarding the credibility of her former client, we refused to disqualify the therapist from offering such testimony in *Whitlow*. Given the scope of her testimony, the objectivity with which Dr. Bellante could testify regarding the interviewing techniques is much less susceptible of being compromised by her prior relationship to one of the complainants than was the objectivity with which the State's expert in *Whitlow* could testify

8

regarding the witness's credibility by her therapeutic relationship with the witness. We therefore hold that the District Court did not err in qualifying Dr. Bellante as an expert in this case.

¶29 Next, Riggs argues that the District Court denied him the rights guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution, and by Article II, Section 24 of the Montana Constitution, when it limited his ability to cross-examine Dr. Bellante, regarding her therapeutic relationship with one of the complaining witnesses, with the intent of exposing bias on her part. We disagree.

¶30 As we observed in *State v. Nelson*, 2002 MT 122, ¶¶ 13-15, 310 Mont. 71, ¶¶ 13-15, 48 P.3d 739, ¶¶ 13-15, the district court is given broad discretion to limit a party's cross-examination of an adverse witness, provided that the party is given a full and fair opportunity to expose bias or motivation to testify falsely on the witness's part. Accordingly, we must in the present case determine whether Riggs was afforded a minimum threshold of inquiry during his cross-examination of Dr. Bellante. *Nelson*, ¶ 13.

¶31 Riggs argues that the District Court barred any inquiry at all into Dr. Bellante's objectivity, thus failing to afford him the constitutional minimum of cross-examination. As a factual matter, Riggs' assertion is erroneous. The complaining witness with whom Dr. Bellante had had a therapeutic relationship did not consent before trial to the disclosure of specific details regarding her treatment by Dr. Bellante, and the District Court barred Riggs' counsel from inquiring along this line. However, defense counsel was permitted to, and did, elicit from Dr. Bellante statements confirming that she had served as a therapist to one of the

9

witnesses. He was also allowed to point out the limitation that the witness's lack of consent to specific disclosures imposed on his inquiry into Dr. Bellante's possible bias, in an attempt to raise doubts in the jurors' minds regarding it.

¶32 Although the cross-examination which the District Court afforded Riggs was perhaps not ideal from the Defendant's standpoint, we are satisfied that Riggs' constitutional rights were not violated. The potential source of bias for Dr. Bellante was her relationship with the complaining witness, not the specific details of treatment. Defense counsel devoted several transcript pages' worth of testimony going to this relationship, and the witness's refusal to consent to further disclosures. We conclude that there was no reversible error in the District Court's ruling; that the court acted reasonably; and that the court did not abuse its discretion.

¶33 ***3. Did the District Court abuse its discretion by denying Riggs' motion for severance?***

¶34 The decision of whether to sever charges which were originally joined for trial is left to the sound discretion of the district court. *State v. Southern*, 1999 MT 94, ¶ 14, 294 Mont. 225, ¶ 14, 980 P.2d 3, ¶ 14 (citations omitted). A criminal defendant seeking to sever counts into separate trials has the burden of proving either that the counts were misjoined under § 46-11-404(1), MCA, or, if joinder was proper, that severing the counts under § 46-13-211(1), MCA, is necessary to prevent unfair prejudice. *Southern*, ¶ 14 (citations omitted). It is not sufficient for a criminal defendant to prove that he will face some prejudice as a result of a joint trial, or that he stands a better chance of acquittal if separate trials are held.

Rather, a criminal defendant must prove that the prejudice is so great as to prevent a fair trial. *Southern*, ¶ 29 (citations omitted).

¶35     In *Southern*, we identified three types of prejudice which may result from consolidating charges. First, a jury may consider the criminal defendant facing multiple charges a "bad man" and accumulate evidence until it finds the defendant guilty of something. Second, a jury may use proof of guilt on one count to convict the defendant of a second count even though that proof would be inadmissible at a separate trial on the second count. Third, the defendant may be prejudiced if he or she wishes to testify on one charge but not on another. *Southern*, ¶ 30. Riggs argues that the first two types of prejudice are present here. We disagree.

¶36     Riggs' argument that the first type of prejudice was present in this case consists, in its entirety, of the following:

> The allegations regarding [one of the complainants] were dismissed as unfounded by law enforcement. Riggs gave statements during the investigation, and his comments were emphasized by the prosecutor. Trial on all charges should not have been permitted.

¶37     We conclude that there is no basis on which to rule that the District Court abused its discretion on this argument.

¶38     Riggs' argument that the second type of prejudice was present in this case likewise fails. Riggs cites the eighteen-month period during which the acts were alleged to have taken place in support of his contention that the District Court erred in not severing the charges. This corresponds with the second factor of the *Just/Matt* rule, which we apply to determine

whether evidence of other crimes is admissible in a trial pursuant to Rules 403 and 404(b), M.R.Evid: (1) the other crimes, wrongs, or acts must be similar; (2) the other crimes, wrongs, or acts must not be too remote in time; (3) the evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he or she acted in conformity with such character, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; (4) although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, danger of misleading the jury, consideration of undue delay, waste of time, or needless presentation of cumulative evidence. *See Southern*, ¶ 34.

¶39     Our prior jurisprudence bespeaks our refusal to set an arbitrary time limit for admissibility of other-crimes evidence when analyzing severance issues. In *State v. Martin* (1996), 279 Mont. 185, 194, 926 P.2d 1380, 1386, we held that evidence of offenses committed over a five-year span are not too remote to be considered admissible other-crimes evidence. Furthermore, we have concluded that the problem of remoteness is alleviated when there is, as here, a continuing pattern of similar conduct. *State v. Tecca* (1986), 220 Mont. 168, 172-73, 714 P.2d 136, 139.

¶40     Accordingly, we conclude that the District Court did not abuse its discretion in denying Riggs' motion to sever the charges.

¶41     *4. Did the District Court fail to ensure Riggs' presence at all critical stages of the trial?*

12

¶42    Riggs contends that his right to be present during trial, a right guaranteed to him by the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution, was impermissibly infringed by the District Court, when it spoke to two jurors outside Riggs' presence. We disagree.

¶43    After M.J.'s mother, Jan Davis, testified on the third day of the trial, the District Court recessed for lunch, and the record shows that the jury was excused. The District Court then advised defense counsel that the bailiff had indicated that a juror wished to speak with the District Court about an unknown matter. The prosecutor stated that she had been informed that the last witness, Ms. Davis, had recognized one of the jurors, Mr. Flory, as her philosophy professor at Montana State University. The prosecutor speculated that Mr. Flory had recognized the witness as one of his students and wanted to inform the District Court of this fact. Defense counsel stated that if that was the case, he was inclined to have the juror simply confirm that his knowledge of the witness would not affect his ability to be fair and impartial. The prosecutor agreed, and the District Court sent the bailiff to ask the juror about his concern.

¶44    The bailiff reported back and confirmed the prosecutor's speculation as to the substance of the juror's concern. The District Court then summoned Mr. Flory in order that he might have the opportunity to express his concern and know that it had been addressed. The District Court then briefly questioned Mr. Flory, both counsel agreed that the juror may continue to serve, and the District Court concluded the matter. Riggs claims that these events

13

occurred outside his presence. Though the record is silent on this point, we assume, *arguendo* that this claim is accurate.

¶45 During the fifth day of trial, with the jury having been excused, the District Court raised the matter of a juror, Mr. Fisher, who had expressed concern that he might have to forfeit the non-refundable airline tickets that he held for a flight which was scheduled to depart on the following morning. The District Court and counsel agreed that Mr. Fisher could come in and talk separately about his concern. After the settlement of instructions, Mr. Fisher met with the District Court and counsel, whereupon the District Court advised him that he would not have to sacrifice his tickets, that he might have to deliberate into the night, and that he should not discuss the situation with the other jurors. Riggs claims that these events, too, occurred in his absence, a claim which the record appears to support.

¶46 The federal constitutional right to be present at all criminal proceedings is one of the most basic rights contained in the Confrontation Clause of the Sixth Amendment. *Illinois v. Allen* (1970), 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356. "The defendant's right to be present at all proceedings . . . which may take his life or liberty is designed to safeguard the public's interest in a fair and orderly judicial system." *Sturgis v. Goldsmith* (9th Cir. 1986), 796 F.2d 1103, 1109.

¶47 In Montana, the right of a criminal defendant to be present at his trial is expressly guaranteed by the Montana Constitution: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel[.]" Art. II, Sec. 24, Mont. Const. Since the right to appear and defend in person is found within Montana's Declaration of

Rights, it is a fundamental right. A right is "fundamental" under Montana's Constitution if the right either is found in the Declaration of Rights or is a right "without which other constitutionally guaranteed rights would have little meaning." *Butte Community Union v. Lewis* (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.

¶48　This Court recognized as early as 1922, when interpreting an identical provision of the 1889 Montana Constitution, that "the defendant must be present throughout the *entire* trial." *State v. Reed* (1922), 65 Mont. 51, 56, 210 P. 756, 757 (emphasis added). We stated in *Reed*:

> No principle of law, relating to criminal procedure, is better settled than that, in felony cases, nothing should be done in the absence of the prisoner. It is his unquestioned right to be confronted with his accusers and witnesses. He has the legal right to be present when the jury are hearing his case, and at all times during the proceeding of the trial, when anything is done which in any manner affects his right[.]

*Reed,* 65 Mont. at 58, 210 P. at 758 (citation and internal quotation marks omitted). *See State v. Bird*, 2001 MT 2, ¶¶ 23-26, 308 Mont. 75, ¶¶ 23-26, 43 P.3d 266, ¶¶ 23-26.

¶49　In *Bird,* we held that the defendant has both a state and federal constitutional right to be present during certain critical stages of the trial proceedings. We held that one critical stage occurs when the judge conducts individual *voir dire* in chambers:

> In the case *sub judice,* the in-chambers *voir dire* was conducted specifically to elicit prospective jurors' personal feelings and experiences regarding domestic violence. Since [the defendant] was excluded from the in-chambers *voir dire,* he never heard those prospective jurors' responses. In particular, he did not have the opportunity to hear the emergency room nurse explain her biases in seeing repeat incidences of domestic violence. This prevented [the defendant] from knowing about her prejudices and from insisting that defense counsel strike her with a peremptory challenge.

15

*Bird*, ¶ 28.

¶50    In *State v. Tapson*, 2001 MT 292, 307 Mont. 428, 41 P.3d 305, we held that another such critical stage of trial proceedings occurred when the judge enters the jury room during deliberations to give further instructions to the jury.  *Tapson*, ¶¶ 27-28.

¶51    In both these cases, we distinguished *United States v. Gagnon* (1985), 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486, on the grounds that the occurrence at which the trial court in that case failed to ensure the defendant's presence did not constitute a critical stage of trial.  *Bird*, ¶ 34; *Tapson*, ¶ 37.

¶52    In *Gagnon*, the United States Supreme Court, interpreting the Confrontation Clause and the Due Process Clause of the United States Constitution, ruled that the defendant's due process guarantees were not violated when the district court met with a juror in chambers, together with counsel for one of the defendants but in the absence of the defendants themselves, to address his concern regarding the fact that one of the defendants was sketching the jury.  The Court stated:

> The mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right.  The defense has no constitutional right to be present at every interaction between a judge and a juror[.]

*Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484, 84 L.Ed.2d at 490 (citation and internal quotation marks omitted).  The Court goes on to state that a defendant has a due process right to be present at a given proceeding whenever his presence has a relation, reasonably

16

substantial, to the fulness of his opportunity to defend against the charge. *Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484, 84 L.Ed.2d at 490.

¶53 We conclude that the present case is more similar to *Gagnon* than to either *Bird* or *Tapson*. The defendant in *Bird* was denied a crucial opportunity to shape the strategy guiding his own defense. *Bird*, ¶ 28. In *Tapson*, the judge's entry alone into the jury room could have prejudiced the defendant, and the deficit in the record made it impossible to say beyond a reasonable doubt that it did not. *Tapson*, ¶ 30.

¶54 In the present case, by contrast, the defendant has made no persuasive claim of prejudice arising out of the episodes under consideration. Both interactions between judge and juror were brief interludes in a complex trial, *Gagnon*, 470 U.S. at 527, 105 S.Ct. at 1484, 84 L.Ed.2d at 490, and defendant had no role to play at either, *Gagnon*, 470 U.S. at 527, 105 S.Ct. at 1484-85, 84 L.Ed.2d at 490. Moreover, in each instance defense counsel was consulted and consented to the court's approach. We therefore conclude that the defendant's rights under the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution, were not infringed.

¶55    We affirm.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART