No. 14295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ANDREW L. McCLEAN,

Defendant and Appellant.

Appeal from: District Court of the Eleventh Judicial District,
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

Moore, Lympus and Doran, Kalispell, Montana
Gary G. Doran argued, Kalispell, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Leslie Taylor argued, Assistant Attorney General, Helena,
Montana
Pat Springer, County Attorney, Kalispell, Montana
Stewart A. Pearce II argued, Deputy County Attorney, Kalispell,
Montana

Submitted: October 24, 1978

Decided: NOV 2 0 1978

Filed:

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant Andrew L. McClean appeals from his judgment of conviction following a jury trial in the District Court of the Eleventh Judicial District, Flathead County. McClean was found guilty of criminal sale of dangerous drugs, in violation of section 54-132(1), R.C.M. 1947.

Defendant was charged with selling approximately one pound of marijuana to Denny Beach, who in turn sold the marijuana to an undercover officer of the Flathead County Sheriff's office, Donald Bruce Bounds. Bounds testified that on September 12, 1977, he and Beach went to a bar where they met defendant shortly after 9:00 p.m. From there Beach and defendant proceeded into the rear parking lot of the bar, while Bounds remained in the bar and watched through a back window. He testified he saw defendant McClean reach in his pickup, pull out a brown package and hand it to Beach. Bounds then went outside, met Beach by his car and paid him $110. Beach and Bounds returned to the inside of the bar where they met defendant once again. Bounds observed Beach give defendant several bills, perhaps keeping a small commission for himself. Then Beach and Bounds left the bar in Bounds' car.

Defendant challenges his conviction on three grounds arising from the conduct of his trial. His first issue centers on a statement made by Bounds during cross-examination that Bounds had taken a polygraph test. Defendant contends the District Court erred by failing to grant a mistrial following the mention of polygraph testing. Second, defendant contends his case was prejudiced because he was not permitted to put witnesses on the stand who would testify that Bounds on numerous occasions had engaged in the sale

-2-

of a variety of regulated drugs and had smoked marijuana. Third, defendant argues he did not have a fair trial because the State was permitted to amend its information shortly before trial by adding Denny Beach as a prosecution witness.

Issue 1. Does the mention by a prosecution witness that he has taken a polygraph test necessarily prejudice a criminal defendant's case so as to require the trial court to grant a mistrial?

Bounds mentioned a polygraph test during cross-examination by defendant's attorney:

"Q. Mr. Bounds, you are providing evidence against an individual on quite a serious crime. A. Yes sir.

"Q. Now, you are stating that you were not under the influence of marijuana that evening. A. I know that I wasn't sir.

"Q. How do you know that? A. Because I hadn't smoked any. I do not smoke marijuana, sir.

"Q. You do not smoke marijuana? A. No sir. As a matter of fact, I took a polygraph."

The District Court denied defendant's motion for mistrial.

For a variety of reasons, the use of polygraph data and the accompanying opinion of the polygraph examiner are generally inadmissible in criminal trials. The principal reason put forward by courts in rejecting the use of such evidence is its questionable reliability. United States v. Alexander (8th Cir. 1975), 526 F.2d 161, 167-68; United States v. Marshall (9th Cir. 1975), 526 F.2d 1349, 1360; United States v. Tremont (6th Cir. 1965), 351 F.2d 144, 146, cert.den. 383 U.S. 944, 86 S.Ct. 1198, 16 L Ed 2d 207 (1966). Some eighteen years ago Montana followed the rule that "'. . . [u]ntil it is established that reasonable certainty follows from such tests, it would be error to admit in evidence the result thereof' . . ." State v. Hollywood

(1960), 138 Mont. 561, 575, 358 P.2d 437, 444 (quoting People v. Becker (1942), 300 Mich. 562, 2 N.W.2d 503, 505).

Despite numerous improvements in design and technique from the simple systolic blood pressure device at issue in the first polygraph decision, Frye v. United States (1923), 54 U.S.App.D.C. 46, 293 Fed. 1013, courts continue to doubt the "lie detector's" reliability. United States v. Alexander, supra, 526 F.2d at 164. As the court in Alexander concluded, "there are too many uncontrollable or unascertainable factors which may affect the polygraphist's conclusion as to the veracity or falsity of the examinee's responses." 526 F.2d at 165. See also Skolnick, Scientific Theory and Scientific Evidence: An Analysis of Lie Detection, 70 Yale L.J. 694, 727 (1961).

In People v. Carter (1957), 48 Cal.2d 737, 312 P.2d 665, 674, the California Supreme Court held it was error to permit a witness to testify that he had been willing to take a lie detector test, thereby permitting the jury to infer that the defendant was not willing. On the other hand, in Johnson v. State (Fla. App. 1964), 166 So.2d 798, the jury was made aware that a prosecution witness was a polygraph examiner and that the examiner had concluded that the defendant had at first lied to him concerning his whereabouts at the time of the alleged crime. Yet because the examiner revealed neither his actual test results nor his conclusions therefrom, and because the defendant later admitted to the examiner that he was in fact present at the scene of the crime, the court held that the polygraphist's testimony was not prejudicial. 166 So.2d at 805.

The Alaska Supreme Court, relying on the Florida court's Johnson decision, applied the rule of whether the mention of

polygraph was prejudicial to a case very similar in its facts to this appeal. Gafford v. State (Alaska 1968), 440 P.2d 405. In Gafford the State's witness, an undercover officer, responded to defense counsel's cross-examination by volunteering that he had described the incident at issue to a lie detector. The Alaska court, quoting from Johnson held:

> ". . . [T]he mere fact that the jury is ap-
> prised that a lie detector test was taken is
> not necessarily prejudicial if no inference
> as to the result is raised or if any infer-
> ences that might be raised as to the result
> are not prejudicial." 440 P.2d at 411,
> quoting 166 So.2d at 805. (Emphasis in ori-
> ginal.)

See also People v. Martin (1965), 62 Ill.App.2d 203, 210 N.E.2d 798, 802, aff'd, (1966), 35 Ill.2d 289, 220 N.E.2d 170; State v. Cor (1964), 144 Mont. 323, 348, 350, 396 P.2d 86, 99-100.

Thus, despite general policy against the use of poly- graph evidence, the issue must be framed in terms of its prejudicial effect on defendant. In this case the District Court correctly denied defendant's motion for a mistrial. The reference to polygraph was made under cross-examination by the State's witness. He made no reference to the results of any such test although his answer clearly carried the inference that he had "passed" a test. There is no sug- gestion that the witness was coached in advance to make the reference. Cf. Gafford v. State, 440 P.2d at 411. Finally, any actual prejudice to defendant appears minimal. The witness' response was to questions concerning his own habits for marijuana use and dealt only indirectly with the charges against defendant. While such a reference to a lie detector may have bolstered the witness' credibility, it does not appear to have done so except perhaps to rehabilitate him from a potentially highly prejudicial attempt at impeachment.

Issue 2. May a party impeach a witness by putting witnesses on the stand to testify to specific instances of the witness' conduct which might show a motive to testify falsely?

Defendant's second issue concerns the order limiting the introduction of impeachment evidence. In his brief defendant argues he should have been permitted to put witnesses on the stand to testify concerning Bounds' personal habits for marijuana use and thereby demonstrate that Bounds had a profit motive in obtaining a conviction. The witnesses available to the defense were willing to testify that Bounds had repeatedly sold and distributed dangerous drugs and had repeatedly indulged in the use and possession of drugs. The witnesses' testimony would have attempted to demonstrate that Bounds used his employment as an undercover narcotics officer to profit himself, to provide for his continuing use of drugs and to successfully secure future employment that he might continue his self-indulgences.

The District Court ruled it would permit witnesses to testify only as to Bounds' "reputation for truth in the community". It refused to allow such testimony "to just vaguely uphold this profit motive, just by their testimony that he at different times was in the possession of drugs and offered them drugs." That testimony, the court concluded, was not relevant to the charges against defendant.

Defendant argues that Rule 404(b), Mont.R.Evid., permits the introduction of evidence of specific acts of the witness, such as he offered, in order to show his motive to testify falsely against defendant. He contends that because Bounds used his employment with the sheriff's office as a cover for obtaining and selling drugs, it would only be

-6-

logical for him to be biased and motivated to testify falsely.

Rule 404(b), Mont.R.Evid., is identical to Rule 404(b) of the Federal Rules of Evidence. It states:

> "(b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Defendant relies on this rule as a means of proving Bounds' motive for testifying falsely. However, in this case subsection (b) must be read together with Rule 404(a)(3) relating to the character of a witness, which provides:

> "Character evidence not admissible to prove conduct, exceptions; other crimes; character in issue.

> "(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

> ". . .

> "(3) Character of witness. Evidence of the character of a witness, as provided in Article VI."

Thus, while evidence of a person's character is not ordinarily admissible to prove the person acted in conformity with that character, there is an exception which is the subject of Rule 608, Mont.R.Evid.

Rule 608 dealing with impeachment and rehabilitation of witnesses contains two parts. Part (a) limits an attack on a witness' credibility to opinion or reputation evidence on the witness' character for truthfulness or untruthfulness:

> "(a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these

limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

Witness A, therefore, may give his opinion as to Witness B's character, but he is limited to stating only his opinion of Witness B's character for truthfulness or untruthfulness.

Part (b) of Rule 608 deals with those instances in which opinion or reputation evidence concerning a witness' character for truthfulness or untruthfulness is admissible and proscribes, except in limited circumstances, the use of extrinsic evidence to prove specific instances of conduct. These limited circumstances are described in the second sentence of part (b), dealing with cross-examination of a witness who has testified concerning his own or another witness' character for truthfulness or untruthfulness:

"(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." (Emphasis added.)

Thus, on direct examination Witness A may not bolster his opinion concerning the truthfulness or untruthfulness of Witness B by making reference to specific instances of B's conduct. On cross-examination, however, Witness A may be questioned on his opinion by reference to such specific instances. This cross-examination, however, is further limited by the trial court's discretion in determining whether it is in fact relevant to the issue of B's credi-

bility.  The point of Rule 608 for the purposes of this

appeal is that reference to specific instances of a witness'

conduct for the purpose of proving his character for truth-

fulness or untruthfulness is <u>never</u> permitted on direct

examination.  In this respect Rule 608, which is nearly

identical to its federal counterpart, acts in conformity

with Rule 405(a), which is identical to the federal rule.

Rule 405(a), governing the methods of proving character,

makes inquiry into specific instances of conduct permissible

only on cross-examination:

> "(a) Reputation or opinion.  In all cases in
> which evidence of character or a trait of
> character of a person is admissible, proof
> may be made by testimony as to reputation or
> by testimony in the form of an opinion.  On
> cross-examination, inquiry is allowable into
> relevant specific instances of conduct."

See Advisory Committee's Notes to Fed.R.Evid. 608(b), 56

F.R.D. 183, 268-69 (1972); Clarke, Montana Rules of Evi-

dence: A General Survey, 39 Mont. L. Rev. 79, 120-21 (1978).

Defendant's contention that he was improperly denied

the opportunity to put various witnesses on the stand to

testify as to witness Bounds' use of marijuana or sale of

drugs is contrary to Rules 405(a) and 608.  This is particu-

larly true in light of Rule 608(b)'s reference to the dis-

cretion of the court.  This rule, along with Rule 403, gives

the trial court wide discretion to exclude evidence which in

its view would create a danger of unfair prejudice or confu-

sion of the issues:

> "Although relevant, evidence may be excluded
> if its probative value is substantially out-
> weighed by the danger of unfair prejudice,
> confusion of the issues, or misleading the
> jury, or by considerations of undue delay,
> waste of time, or needless presentation of
> cumulative evidence."  Rule 403, Mont.R.Evid.

Thus, the trial court acted within its discretion in refusing to permit defendant's witnesses to testify concerning specific instances of marijuana use by Bounds.

Issue 3. Should the trial court have granted a defense motion for a continuance after permitting the State to amend its witness list on the morning of trial?

On Friday, February 3, 1978, defendant's counsel received the information that Denny Beach had negotiated a plea with the county attorney, that he would testify for the State against defendant McClean, and further that the State would substitute one detective for another as a witness. Due to a prior commitment defense counsel left that weekend for a bar association conference in another part of the state. On Monday morning, the 6th, the court granted the State's motion to amend its information to change the name of the detective witness and to add Denny Beach as a witness and granted defendant the noon hour to interview Beach, rather than granting a continuance as defendant requested.

Defendant contends the State lacked good cause to amend its list of witnesses as required by section 95-1803(a)(1), R.C.M. 1947. "Good cause" was defined in State v. Klein (1976), 169 Mont. 350, 547 P.2d 75, as a "substantial reason". The policy is to avoid surprise to a defendant which would prejudice his case:

> "'Good cause' has been defined as 'substantial reason', one that affords a legal excuse.
>
> "The court should first determine whether the need for the additional witnesses and the reason for their not being disclosed earlier is a 'substantial reason'. It should then determine whether there is prejudice based on surprise and whether this surprise can be overcome by the granting of a continuance. If the surprise element can be overcome by a continuance, then the witnesses should be endorsed and the continuance granted. The spirit and intent of the law is that names and addresses of potential witnesses should be disclosed as soon as they are known." 169 Mont. at 354, 547 P.2d at 77.

Here, the State informed defendant's counsel of the change in the information within hours after Beach's negotiated plea. Defendant concedes the need for changing the name of the detective who would testify as to chain of evidence. Defense counsel chose to keep his commitment to travel the weekend before trial, and, as the State points out, defense counsel does not practice law alone. One of his partners could have interviewed Beach. Further, on the day of trial, defense counsel chose to keep a speaking engagement at a bar luncheon rather than interview Beach. From a practical standpoint it is difficult to see how defense counsel could have adequately prepared for trial without interviewing Beach in any case. Under these circumstances it is hardly a case of surprise to defendant. He knew of Beach's important role in the transaction for which he was to be tried. The trial court did not err by refusing to grant a continuance.

The judgment of the District Court is affirmed.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices