DA 08-0036

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 243

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

MARK BONAMARTE,

  Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 04-189
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

  William F. Hooks, Attorney at Law; Helena, Montana

  For Appellee:

  Hon. Steve Bullock, Montana Attorney General; John Paulson,
Assistant Attorney General; Helena, Montana

  Susan L. Wordal, City Prosecutor; Bozeman, Montana

      Submitted on Briefs: November 19, 2008

         Decided: July 21, 2009

Filed:

  _____
       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Mark Bonamarte appeals his conviction of Partner or Family Member Assault under § 45-5-206, MCA. We affirm.

¶2 We consider the following issues:

¶3 1. Did the District Court err by concluding the Municipal Court properly excluded evidence offered by Bonamarte to prove the victim's motive and to impeach the victim?

¶4 2. Did the District Court err by concluding the Municipal Court did not abuse its discretion by admitting expert testimony regarding "battered woman" syndrome?

## PROCEDURAL BACKGROUND

¶5 On April 30, 2004, a jury seated in the Bozeman Municipal Court convicted Bonamarte of misdemeanor Partner or Family Member Assault. The Municipal Court, Hon. Patricia Carlson presiding, sentenced Bonamarte to one year in jail with all but thirty days suspended, and ordered him to pay fines and restitution. The Municipal Court instructed the State to arrange a hearing to determine the amount of restitution within sixty days. Prior to the expiration of sixty days, Bonamarte appealed to the District Court, challenging the Municipal Court's evidentiary rulings and its order requiring payment of restitution. The District Court affirmed the rulings and remanded the case to the Municipal Court for entry of a final order regarding the amount of restitution. Bonamarte appealed to this Court, and we dismissed the case without prejudice, concluding the appeal was premature. *State v. Bonamarte*, 2006 MT 291, 334 Mont. 376, 147 P.3d 220.

2

¶6    On March 1, 2007, the Municipal Court issued its final order on the amount of restitution. Bonamarte again appealed his conviction to the Eighteenth Judicial District Court. Both parties resubmitted their prior briefs to the District Court, which again affirmed the Municipal Court's evidentiary rulings. Bonamarte appeals the District Court's final order affirming his conviction.

## FACTUAL BACKGROUND

¶7    On January 15, 2003, Bozeman police officers responded to a report of domestic violence. At the scene, Lynette Felix told the officers that Bonamarte had struck her several times, and though he had left the apartment, she feared for her and her children's safety. Bonamarte was subsequently arrested and charged with misdemeanor Partner or Family Member Assault in violation of § 45-5-206, MCA.

¶8    Felix and Bonamarte had been romantically involved for three years prior to this incident. Each of them also shared in the operation of a car-wash business, which Felix ultimately purchased from Bonamarte. Felix testified that their relationship had been characterized by violence and threats by Bonamarte and by his efforts to control her and her family. She testified that he had beat her about 100 times over a period of a year and a half, that she had been reluctant to tell anyone, and during that time she had undertaken efforts to cover up her injuries with make-up and clothing.

¶9    Prior to trial, the State orally moved the Municipal Court to prohibit Michael Richards, of Mountain West Bank, from testifying at trial. Through Richards' testimony, Bonamarte intended to introduce a loan application Felix submitted to the bank. On the

3

application, Felix falsely represented to the bank that she anticipated receiving a large amount of money through an inheritance. Bonamarte sought to use this evidence to demonstrate that Felix was not credible. The Municipal Court granted the State's motion, expressing concern that this evidence was potentially misleading and could confuse the issues to be put before the jury, noting that this case was not about bank fraud but assault. However, the court permitted Bonamarte to cross-examine Felix regarding the falsity of the bank application. The court added that if Felix were to perjure herself about the application, it would re-consider the use of extrinsic documentary evidence.

¶10 When asked, Felix admitted she provided false information to the bank on her application. She explained that she had done so because she was required to do so by Bonamarte. Bonamarte further examined her regarding their business ventures. Bonamarte then attempted to introduce several documents, other than the loan application, which he contended contradicted Felix's testimony about the poor financial health of their business. The court denied admission of these documents, citing possible confusion of the jury. Bonamarte testified to the effect that the business was in sound financial condition and about other issues he believed established a motive for Felix to lie. His theory was that Felix was motivated to falsely claim she had been assaulted in order to remove Bonamarte from the business by a restraining order, allowing her to take additional sums from the business to service her significant debt.

¶11 Immediately prior to the State's calling of Kathy Coles to testify as an expert witness, Bonamarte moved the court to exclude her testimony as irrelevant and

4

prejudicial. The court responded that Bonamarte could have raised this objection much earlier. The court declined to preemptively exclude Coles' testimony, stating it would consider any objections Bonamarte might make to her testimony after she was qualified as an expert. When Coles began to testify about police recognition of victim and abuser profiles observed in domestic disturbances, Bonamarte objected on relevance grounds and improper vouching of Felix. The Court sustained Bonamarte's objection and cautioned the prosecutor to elicit only testimony that would help the jury understand the evidence presented at trial. Bonamarte again objected when the prosecutor questioned Coles about the role of power and control in domestic violence, arguing that "syndrome testimony" was inadmissible. The court overruled this objection.

¶12 On appeal, the District Court concluded that the Municipal Court did not abuse its discretion by its evidentiary rulings.

## STANDARD OF REVIEW

¶13 A district court's review of a municipal court's orders and judgment is limited to review of the record and questions of law. *State v. Ditton*, 2006 MT 235, ¶ 18, 333 Mont. 483, 144 P.3d 783. This Court reviews a district court's conclusions of law to determine whether they are correct. *Ditton*, ¶ 18. We review evidentiary rulings for abuse of discretion. *Ditton*, ¶ 18; *State v. Nelson*, 2002 MT 122, ¶ 9, 310 Mont. 71, 48 P.3d 739. A court abuses its discretion if it acts arbitrarily or unreasonably, and a substantial injustice results. *State v. Sanchez*, 2008 MT 27, ¶ 15, 341 Mont. 240, 177 P.3d 444.

5

**DISCUSSION**

**¶14    1. Did the District Court err by concluding the Municipal Court properly excluded evidence offered by Bonamarte to prove the victim's motive and to impeach the victim?**

¶15    Bonamarte argues the Municipal Court's decision to exclude Richards' proffered testimony about Felix's untruthful loan application and its refusal to admit certain financial documents, denied him his Sixth Amendment right to confront the witnesses against him and prevented him from mounting a successful defense. The State responds that Bonamarte did not raise a constitutional argument in the Municipal Court, and that the court properly exercised its discretion under Montana Rules of Evidence 403 and 608.

¶16    As the District Court noted, we held in *Nelson*, "the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the Defendant." *Nelson*, ¶ 13 (citation omitted). Nonetheless, "a trial court has broad discretion to limit the scope of cross-examination to those issues it determines are relevant to the trial" and "limiting the scope of cross-examination does not necessarily violate a defendant's right to confront an adverse witness." *Nelson*, ¶ 15 (citations omitted). While the trial court's rulings regarding admission of evidence and cross-examination were necessarily related to Bonamarte's right of confrontation, he made no separate constitutional argument in the Municipal Court, challenging only the court's application of the rules of evidence. Therefore, our review is confined to whether the court's rulings were erroneous under those rules.

6

¶17 Rule 608(b), M. R. Evid. prohibits the use of extrinsic evidence to prove specific instances of conduct for the purpose of attacking a witness's credibility. Rule 608(a) permits opinion testimony concerning a witness's credibility under certain conditions, but Bonamarte did not offer such opinion evidence here. Rule 608(b) permits the use of extrinsic evidence regarding specific instances of conduct probative of the witness's character for truthfulness or untruthfulness during cross-examination, subject to the proper exercise of discretion by the trial court. *See State v. Gommenginger*, 242 Mont. 265, 271-75, 790 P.2d 455, 459-61 (1990). Under Rule 403, a court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

¶18 Bonamarte's arguments are similar to those made by the defendant in *State v. McClean*, 179 Mont. 178, 587 P.2d 20 (1978). McClean argued the trial court had erred by not permitting him to present witnesses who were able to testify that the State's primary witness, an undercover officer, was also a drug user and dealer and thus had a financial motive to testify falsely to continue his employment and access to drugs. *McClean*, 179 Mont. at 183, 587 P.2d at 23. Applying Rule 608(b) to those facts, we offered that "reference to specific instances of a witness' conduct for the purpose of proving his character for truthfulness or untruthfulness is *never* permitted on direct examination." *McClean*, 179 Mont. at 185, 587 P.2d at 25.

7

¶19    In *Nelson*, the defendant sought to introduce evidence of a plea agreement a witness had made in a prior case to prove the witness tended to testify against his co-defendants. *Nelson*, ¶ 12. The trial court permitted Nelson to cross-examine the witness about the plea negotiations related to the immediate case, but did not allow evidence of plea agreements made in other cases. *Nelson*, ¶¶ 12, 18. We stated that, while a defendant holds the right to present evidence of a witness's bias, the scope of the evidence is subject to limitation by the trial court. *Nelson*, ¶ 15. We held that the trial court exercised appropriate discretion in imposing this evidentiary limitation, because it afforded the defendant an opportunity to interrogate the witness regarding the plea agreement made in connection with his testimony against Nelson. *Nelson*, ¶¶ 18-19.

¶20    Here, the trial court allowed Bonamarte to ask Felix about the false representations she made in her loan application. Felix admitted to lying on the loan documents. Bonamarte was permitted to examine Felix about a motive she may have had to lie. However, permitting Bonamarte to call Richards to testify on direct examination regarding this specific instance of Felix's conduct for the purpose of proving Felix's character for untruthfulness would have been contrary to Rule 608. *See McClean*, 179 Mont. at 185, 587 P.2d at 24-25. Additionally, following Felix's testimony that she had lied on the loan application, introduction of the documents themselves would have been cumulative.

¶21    We likewise conclude that the District Court did not err by concluding that the Municipal Court did not abuse its discretion by limiting evidence relating to the general

8

health of the parties' business. Bonamarte was able to cross-examine Felix regarding the car-wash business, and was also permitted to present evidence on this point through his own testimony. The court acted within its discretion to exclude evidence which might create undue prejudice, confuse the issues, mislead the jury, or which was cumulative under Rule 403.

**¶22   2. Did the District Court err by concluding the Municipal Court did not abuse its discretion by admitting expert testimony regarding "battered woman" syndrome?**

¶23   The District Court determined that the Municipal Court properly followed our holding in *State v. Stringer*, 271 Mont. 367, 897 P.2d 1063 (1995), by restricting Coles' expert testimony to the general nature and behavior of battered women, and by not permitting her to testify as to Felix's credibility. Bonamarte argues that our holding in *Stringer* involved "a limited situation in which an expert may be necessary to help a jury understand why an allegedly battered woman would recant a statement that the accused beat her. No such fact situation is presented in this case." Because there was no recantation in this case, Bonamarte argues that Coles' testimony served only to bolster Felix's credibility. The State answers that Coles' testimony was necessary to help the jurors understand the general nature and behavior of battered women. Without her testimony, the State argues, the jury may have been unable to assess the evidence correctly.

¶24   *Stringer* did involve a recantation, and we explained that the expert testimony could help the jury to understand the inconsistencies in the victim's testimony. *Stringer*,

9

271 Mont. at 377, 897 P.2d at 1069. We also noted that the testimony "provided the jury with information to aid the jury in evaluating the evidence. This type of limited testimony does not invade the jury's role in determining the credibility of witnesses." *Stringer*, 271 Mont. at 377, 897 P.2d at 1069.

¶25 Felix testified that Bonamarte had beaten her about 100 times over a period of a year and a half. She testified that he had threatened to harm members of her family, including having her children raped, tortured and murdered, if she told anyone what had happened. She testified about Bonamarte's control over her, including that she had lied on the loan application because Bonamarte had required her to do so. In response, Bonamarte attempted to cast doubt upon Felix's testimony by asking why, during all of this alleged abuse, Felix had previously failed to seek help. During closing argument, Bonamarte's counsel questioned why Felix would not at least tell a best friend that "Mark's beating me up."

¶26 Coles testified generally about the dynamics of an abusive relationship, including the common characteristics of women who have been abused over an extended period of time by a dominant male figure, and why an abused person might not immediately come forward for help. Coles did not testify about Felix directly or opine about whether Felix was a battered spouse. Coles' testimony provided general information about the unique behavior of battered spouses that may not be known commonly by a lay juror. While Coles' testimony was explanatory of victim behavior and thus indirectly supportive of Felix's position in the matter, Coles did not testify about Felix's personal situation or

10

about her believability. Whether Felix was credible and whether she was actually a victim of abuse was left to the jury's determination. We conclude that the District Court did not err by concluding the Municipal Court did not abuse its discretion by the evidentiary rulings entered on this testimony.

¶27 Affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS