

DA 09-0255

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 62

CITY OF KALISPELL,

      Plaintiff and Appellee,

  v.

MOLLY MILLER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 2008-353A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammi E. Fisher, Fisher Law Firm, Kalispell, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, Micheal S. Wellenstein
Assistant Attorney General, Helena, Montana

          Kristi Curtis, Assistant Kalispell City Attorney, Kalispell, Montana

          Submitted on Briefs:  February 24, 2010

                   Decided:  March 24, 2010

Filed:

_____
                Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Molly Miller (Miller) was charged with obstructing a peace officer, a misdemeanor. Following a jury trial in the City of Kalispell Municipal Court (Trial Court), Miller was convicted as charged. She appealed the conviction to the Eleventh Judicial District Court. The District Court affirmed the guilty verdict. Miller appeals. We reverse in part and affirm in part.

## ISSUES

¶2 A restatement of the issues on appeal is:

¶3 Did the District Court err in affirming the Trial Court's admission of evidence pertaining to Miller's homosexuality?

¶4 Did the District Court err in affirming the Trial Court's admission of evidence of Jennifer Benware's (Benware) automobile accident on the night of the incident?

¶5 Did the District Court err in concluding that the Trial Court did not abuse its discretion by allowing Benware to be treated as a hostile witness?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 On February 9, 2008, Miller, a probation and parole officer, and her lesbian partner Benware, along with a friend and co-worker of Benware's, Amanda Dumke, spent an evening drinking at a local bar in Kalispell. After several drinks, Benware threw a beer bottle at Miller and was evicted by the barkeep for disorderly behavior. Miller and Dumke remained at the bar but Dumke grew concerned about Benware and called to check on her. This conversation caused Dumke significant concern and at 9:51 p.m., she called the Kalispell Police Department (KPD), asking that they conduct a "welfare

2

check" on Benware. Dumke explained that Benware, a lawful gun owner, was "playing" with her gun and was very upset. The KPD agreed to dispatch officers immediately. However, when Dumke told Miller she had called the KPD, Miller feared that Benware might lose her job at the Flathead County Sheriff's Department Animal Control Unit; therefore, at 10:06 p.m., Miller called the KPD dispatcher, identified herself as a probation and parole officer, and told the dispatcher that Dumke's call had been a prank and Benware was with them at the bar.

¶7 Meanwhile, when an intoxicated Benware arrived home after being expelled from the bar, she took several prescription sleeping pills and then left in her car, intending to get a soft drink. As a result, she was not at home when the KPD arrived to check on her. While KPD officers were still at Benware's residence, dispatch called the officers and informed them that the requested welfare check had been a prank. The officers left Benware's home and suspended their efforts to find Benware. Unbeknownst to the officers, Miller, or Dumke at that time, Benware had had an automobile accident at approximately 9:54 p.m., which passersby had reported to the Flathead County Sheriff's Department. This accident occurred approximately 12 minutes before Miller told the KPD dispatcher that Benware was at the bar with her.

¶8 On February 25, 2008, the City of Kalispell charged Miller with misdemeanor obstructing a peace officer based on Miller's untruthful claim that Dumke's call had been a hoax and that Benware was with them. A jury trial was held in June 2008, at the conclusion of which the jury convicted Miller of the charged offense. Miller appealed to the District Court arguing that the Trial Court erred in allowing multiple references to

3

Miller's homosexuality into evidence and in allowing reference to Benware's automobile accident. She claimed that such evidence was irrelevant, without probative value, and highly prejudicial. She also asserted that the Trial Court abused its discretion in allowing Benware to be treated as a "hostile" witness without a preliminary showing of hostility. The parties briefed the issues to the District Court, and on April 21, 2009, the District Court affirmed the Trial Court. Miller filed a timely appeal.

## STANDARD OF REVIEW

¶9 Under Rule 15 of the Montana Uniform Municipal Court Rules of Appeal to District Court (UMCRApp), a district court's review of a municipal court's orders and judgment is limited to review of the record and questions of law. *State v. Bonamarte*, 2009 MT 243, ¶ 13, 351 Mont. 419, 213 P.3d 457 (citation omitted). This Court reviews a district court's conclusions of law to determine whether they are correct. *Bonamarte*, ¶ 13. We review evidentiary rulings for abuse of discretion. *Bonamarte*, ¶ 13. A court abuses its discretion if it acts arbitrarily or unreasonably, and a substantial injustice results. *Bonamarte*, ¶ 13.

## DISCUSSION

¶10 *Did the District Court err in affirming the Trial Court's admission of evidence pertaining to Miller's homosexuality?*

¶11 Miller maintains on appeal that the Trial Court erred in allowing repeated references to her homosexuality during the trial. Relying on *State v. Ford*, 278 Mont. 353, 929 P.2d 245 (1996), and extra-jurisdictional cases, she claims her sexual orientation is unrelated to the elements of the charged crime and therefore it was irrelevant. She

4

further opines that admission of this evidence was highly prejudicial, had no probative value, and constituted reversible error. Miller had suggested to the Trial Court during pretrial discussion of motions that the relationship between Miller and Benware be characterized as "close" or "best" friends to the jury.

¶12    The City argued to the Trial Court that characterizing the women's relationship as anything other than what it was—an intimate homosexual relationship—was to lie and mislead the jury. It argued that knowledge that the women were intimate partners put both Benware's and Miller's conduct during that evening in context.

¶13    The Trial Court denied Miller's pretrial motion to exclude evidence of homosexuality, noting that had Miller and Benware been a man and a woman, the nature of their relationship would be relevant and admissible. The District Court affirmed the Trial Court's ruling concluding that "[t]he salient aspect of the evidence is the romantic nature of the relationship—not whether it was lesbian or heterosexual."

¶14    While the Trial Court and the District Court equated homosexuality and heterosexuality for purposes of legal analysis, we conclude it was prejudicial error to do so under the circumstances presented here. Society does not yet view homosexuality or bisexuality in the same manner as it views heterosexuality. Because there remains strong potential that a juror will be prejudiced against a homosexual or bisexual individual, courts must safeguard against such potential prejudice.

¶15    In *Ford*, Ford was charged with sexual intercourse without consent with another man. At trial, Ford testified that he was bisexual. The jury returned a guilty verdict and Ford appealed, in part, on grounds that the district court erroneously overruled his

5

objections to the admissibility of evidence of his bisexuality. While we affirmed the district court in *Ford*, noting that Ford's sexuality "was relevant to, and probative of an essential issue in this case," we also cautioned:

> There is, unquestionably, the potential for prejudice in this situation. There will be, on virtually every jury, people who would find the lifestyle and sexual preferences of a homosexual or bisexual person offensive. . . . [O]ur criminal justice system must take the necessary precautions to assure that people are convicted based on evidence of guilt, and not on the basis of some inflammatory personal trait. Therefore, we caution prosecutors and district courts not to assume, based on this opinion, that evidence of a defendant's sexual preference would be admissible under most circumstances.

*Ford*, 278 Mont. at 362, 929 P.2d at 250.

¶16    Unlike the situation in *Ford*, where Ford's sexual orientation was squarely at issue, Miller's sexual orientation and the existence of an intimate relationship with Benware was not probative or relevant evidence vis-à-vis the crime with which Miller was charged. As Miller suggested before trial, if the State was concerned that the jury understand Miller's motive for calling off the KPD welfare check, it could have simply explained that the two women were good friends. There was no need to make repeated references throughout the trial to the homosexual nature of their relationship—either as an element of the crime or to establish context. As we noted in *Ford*, if there is no need for purposes of proof of a crime to introduce to the jury a potentially "inflammatory personal trait," then it may well be error to do so. *Ford*, 278 Mont. at 362, 929 P.2d at 250. Under the circumstances of this case, we conclude that introduction of the nature of the parties' sexual relationship was an abuse of the Trial Court's discretion. Therefore, we reverse the District Court on this issue.

6

¶17    *Did the District Court err in affirming the Trial Court's admission of evidence of Benware's automobile accident on the night of the incident?*

¶18    Miller sought to exclude mention at trial of the automobile accident Benware had minutes before Miller told the KPD dispatcher that Benware was with her at the bar. Miller argued to the District Court and to this Court on appeal that the accident was not relevant to the criminal charge against her and that it prejudiced the jury against her. She asserts that because Benware's accident had already occurred by the time she spoke with the dispatcher, the two incidents were unrelated and mention of the accident had no probative value.

¶19    The City counters that the accident establishes that Benware was a danger to herself that night; therefore, Dumke's call was neither a hoax nor unfounded. Kalispell submits that Miller's untruthful call obstructed the police from continuing to conduct a needed welfare check on Benware.

¶20    Section 45-7-302(1), MCA, imposes criminal liability for obstructing an officer and states:

> A person commits the offense of obstructing a peace officer or public servant if the person knowingly obstructs, impairs, or hinders the enforcement of the criminal law, the preservation of the peace, or the performance of a governmental function, including service of process.

"Knowingly" is defined in this context at § 45-2-101(35), MCA, as "when the person is aware of the person's own conduct."

¶21    It cannot be disputed that Miller "knowingly" placed the call to the KPD dispatcher and reported that Benware was fine and with her at the bar. It is reasonable to conclude from that call that Miller intended to mislead officers as to Benware's location

7

and to prevent the officers from investigating Benware's whereabouts and condition. The evidence of Benware's automobile accident proves that Miller provided untruthful information to the KPD. Therefore, we cannot conclude that admission of this evidence was an abuse of discretion.

¶22 *Did the District Court err in concluding that the Trial Court did not abuse its discretion by allowing Benware to be treated as a hostile witness?*

¶23 Relying on *State v. Anderson*, 211 Mont. 272, 686 P.2d 193 (1984), Miller argues that the Trial Court abused its discretion by granting the City's request, prior to Benware's testimony, to treat Benware as a "hostile" witness under M. R. Evid. 611(c) (Rule 611(c)). She asserts that Benware was not hostile towards the City and reflected no hostility that would warrant allowing the prosecutor to ask Benware leading questions.

¶24 The City counters that under Rule 611(c) it was authorized to ask leading questions because Benware, who testified that she was in a current relationship with Miller, was "a witness identified with an adverse party." Rule 611(c) provides:

> Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

¶25 In *Anderson*, Anderson was charged with 3 counts of sexual assault on 3 minor girls aged 9, 10, and 13. The 10-year old child was his stepdaughter, M. M had been listed as a prosecution witness but was not called by the prosecution at the trial. Anderson called her as a witness and requested that she be examined as a hostile witness. The State objected and the trial court denied the motion until M's testimony reflected

8

hostility. M's testimony did not demonstrate hostility; rather, her testimony absolved Anderson. While the district court's ruling in *Anderson* is distinguishable from several other cases in which we have noted the well-known exception to the general provision against leading questions exists when the witness is a child (*see State v. Eiler*, 234 Mont. 38, 46, 762 P.2d 210, 215 (1988) and *Bailey v. Bailey*, 184 Mont. 418, 421, 603 P.2d 259, 261 (1979)), we held that the district court did not abuse its discretion in denying Anderson's motion until such time as M displayed hostility.

¶26 Miller relies on this holding to support her argument. However, we conclude that *Anderson* is factually distinguishable and supports our ruling here. In *Anderson*, despite clear precedent that a demonstration of hostility was *not* required before a child witness could be interrogated with leading questions, we nonetheless acknowledged a trial court's broad discretion to issue such a ruling and deferred to it. We do so here as well.

¶27 There is no question that Miller and Benware had a close association at the time of this trial however the relationship might have been characterized for the jury. Accordingly, under the text of the rule, interrogation by leading questions would be permitted because Benware was clearly "identified with an adverse party." While the better course on remand would be for the State to establish hostility on direct examination before seeking to treat Benware as hostile, we cannot conclude under the text of the rule that the court's preliminary ruling in this regard was an abuse of discretion.

## CONCLUSION

¶28 For the foregoing reasons, we affirm the District Court's ruling which upheld the Trial Court's admission of evidence pertaining to Benware's automobile accident and the

9

Trial Court's decision allowing Benware to be treated as a hostile witness. We conclude, however, that the District Court erred in affirming the Trial Court's admission of evidence of and repeated reference to Miller's homosexuality, and that a new trial is therefore warranted. Accordingly, we reverse and remand this matter to the District Court for further proceedings in accordance with this Opinion.

/S/ PATRICIA O. COTTER

We concur:

/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

Justice Brian Morris dissents.

¶29     The Court overreaches in its search for prejudice and perpetuates the stereotypes from which it professes to protect Miller. I disagree with the Court's conclusion that the municipal court improperly admitted evidence of Miller's intimate relationship with Benware. The State's allegedly prejudicial remarks emphasized the intimate nature of the relationship between Miller and Benware in order to demonstrate that Miller had a motive to make the call in order to protect Benware. The State's characterization of the relationship did not emphasize its same sex nature. The State instead focused on the length and intimacy of the relationship between Miller and Benware.

¶30     The State argued that the long-term intimate nature of the relationship between Miller and Benware proved qualitatively different than a mere friendship to demonstrate

Miller's motive to protect Benware. The Court appears to concede that evidence regarding the nature of the relationship would have been relevant and admissible had the relationship been a heterosexual one. ¶ 14. Yet the Court concludes that such evidence should have been inadmissible here solely because it concerned a same sex relationship. *Id*.

¶31 Miller used *voir dire* in an effort to uncover any potential for prejudice arising from Miller's sexual orientation and her relationship with Benware. Miller's counsel questioned the jury exhaustively about same sex relationships and the potential for prejudice against a lesbian defendant. Miller's counsel failed to unearth any potential prejudice during *voir dire*. I would not assume that any unspoken prejudice among the potential jurors rose to the level of a potential juror being more likely to convict Miller for misdemeanor obstruction of a peace officer due to the fact that Miller and Benware had established an intimate relationship for thirteen years. I dissent from the Court's conclusion that these limited remarks tainted the jury to the point of depriving Miller of a fair trial.

/S/ BRIAN MORRIS

Chief Justice Mike McGrath and Justice Jim Rice join in the foregoing dissent.

/S/ MIKE McGRATH
/S/ JIM RICE

11