FILED

June 16 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0316

DA 14-0316

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 160

CODY McDONALD,

       Plaintiff, Appellant, and Cross-Appellee,

   v.

PONDEROSA ENTERPRISES, INC.,
RTK CONSTRUCTION, INC., and
JOHN DOES 1-10,

       Defendants, Cross-Appellant, and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                 In and For the County of Gallatin, Cause No. DV-12-148C
                 Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Lucas J. Foust, Foust Law Office, P.C., Bozeman, Montana

           Elizabeth A. Brennan, Brennan Law & Mediation, PLLC, Missoula,
           Montana

       For Appellees:

           Randall G. Nelson, Nelson Law Firm, P.C., Billings, Montana
           (*Attorney for RTK Construction, Inc.*)

           Edward J. Guza, Guza, Nesbitt & Putzier, PLLC, Bozeman, Montana
           (*Attorney for Ponderosa Enterprises, Inc.*)

                     Submitted on Briefs:  February 25, 2015
                              Decided:  June 16, 2015

Filed:

                                 Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Cody McDonald ("McDonald") appeals from the order of the Eighteenth Judicial District Court, Gallatin County, granting summary judgment to Ponderosa Enterprises, Inc. ("Ponderosa"). McDonald also appeals certain evidentiary rulings made by the District Court. Ponderosa cross-appeals. Appellee RTK Construction Inc. ("RTK") requests fees and costs associated with this appeal.

## FACTUAL AND PROCEDURAL HISTORY

¶2     Ponderosa is a framing company located in Bozeman, Montana. Matt Orrell ("Orrell") is the principal of Ponderosa. McDonald is a construction worker in Bozeman, Montana, doing business as Head First Construction. McDonald was approved as an independent contractor by the Montana Department of Labor on April 16, 2008.

¶3     RTK, a construction company, hired Ponderosa to frame a quilt shop in Sidney, Montana. Ponderosa then hired McDonald as an independent contractor to assist with the framing.

¶4     McDonald and Orrell each worked on building a separate wall for the quilt shop. Orrell's wall was approximately 24-30 feet long and 12 feet tall. Estimates for the weight of the wall ranged from 880 lbs. to 1,028 lbs.

¶5     On June 28, 2011, Orrell asked McDonald and two plumbers working on the building to help him manually lift the wall. As the men were lifting the wall it collapsed and fell on McDonald and Orrell. McDonald was seriously injured.

¶6      In September 2011, McDonald filed for Worker's Compensation benefits and began receiving $633 per week in Temporary Total Disability payments from State Fund.

2

In doing so, McDonald contended that he had been an employee of Ponderosa at the time of the accident.

¶7    On February 29, 2012, McDonald brought suit against Ponderosa and RTK, alleging, in part, negligence and violation of §§ 50-71-201, et. seq., MCA, of the Montana Occupational Safety and Health Act ("MOSHA"). In his complaint, McDonald claimed to be an employee of Ponderosa.

¶8    In February 2013, McDonald reached a settlement with State Fund dismissing his claim in exchange for $332,000. The settlement was approved by the Worker's Compensation Court in an order on February 27, 2013, and the case was dismissed.

¶9    On March 18, 2013, Ponderosa moved for summary judgment on the MOSHA claims, arguing that McDonald was in fact an independent contractor rather than an employee at the time of the accident and thus MOSHA did not apply.

¶10    On August 7, 2013, while Ponderosa's motion for summary judgment was pending, McDonald filed an Unopposed Stipulation with the District Court. The stipulation was intended to resolve the question of McDonald's status by declaring that he was an independent contractor at the time of his injury. The District Court approved the stipulation in an order on August 28, 2013.[1]

¶11    The District Court granted Ponderosa's motion for summary judgment on the MOSHA claims on January 2, 2014. The court reasoned that, because McDonald was an independent contractor, not an employee, at the time of his injury, Ponderosa did not owe

---

[1] We acknowledge the confusion engendered by McDonald's shift from employee status to independent contractor status. However, because that issue is not before us, we do not address it here.

3

him any duties of safety under MOSHA. On January 16, 2014, the District Court issued an order clarifying that RTK also had no safety duties towards McDonald under MOSHA.

¶12 A five-day jury trial was held, beginning on January 17, 2014, on the remaining negligence claims against Ponderosa and RTK. At the outset of trial, the District Court, at Ponderosa's request, ordered the parties to refrain from discussing the existence of "rules" in place on a job site. The court allowed the parties to discuss the "duty to use reasonable care" and "custom and practice." At the conclusion of the second day of trial, RTK moved for a directed verdict, arguing that insufficient evidence had been presented to establish that it had breached its duty of reasonable care towards McDonald. Neither Ponderosa nor McDonald objected to the motion, and the court dismissed RTK from the case.

¶13 The jury returned a verdict that Ponderosa was not negligent. McDonald appealed on May 27, 2014. On June 3, 2014, Ponderosa moved this court to include RTK as a party to the appeal. RTK opposed the motion. Ponderosa filed a notice of cross-appeal on June 11, 2014. On July 1, 2014, we ordered all pleadings to be served on RTK as a party to the appeal. On August 21, 2014, RTK filed a motion to be dismissed from the appeal. The motion was opposed by Ponderosa. We denied RTK's motion on September 9, 2014.

**STANDARDS OF REVIEW**

¶14 We review a grant of summary judgment de novo, applying the same criteria as the district court. *Bonilla v. University of Montana*, 2005 MT 183, ¶ 10, 328 Mont. 41,

4

116 P.3d 823. We review a court's evidentiary rulings for abuse of discretion. *State v. Bonamarte*, 2009 MT 243, ¶ 13, 351 Mont. 419, 213 P.3d 457. A court abuses its discretion if it acts arbitrarily or unreasonably and a substantial injustice results. *Bonamarte*, ¶ 13.

## DISCUSSION

¶15 McDonald presents two issues:

*1. Did the District Court err when it found that MOSHA did not create a duty of safety running from an employer to an independent contractor?*

*2. Did the District Court err when it prohibited testimony related to "rules" in place on a construction site?*

¶16 RTK raises a single issue:

*3. Is RTK entitled to fees and costs for being improperly joined as an appellee by Ponderosa?*

¶17 Because we affirm, we need not reach Ponderosa's issues raised on cross-appeal.

¶18 *1. Did the District Court err when it found that MOSHA did not create a duty of safety running from an employer to an independent contractor?*

¶19 The crux of this case is whether § 50-71-201, MCA, creates a duty for employers to meet certain safety guidelines with respect to independent contractors. Based on the plain language of the Montana Code, we must conclude that it does not.

¶20 Section 50-71-201, MCA, in part, requires an employer to:

(1) furnish a place of employment that is safe for each of the employer's employees;

. . .

(3) adopt and use practices, means, methods, operations, and processes that are reasonably adequate to render the place of employment safe; and

5

(4) do any other thing reasonably necessary to protect the life, health, and safety of the employer's employees.

MOSHA incorporates the definition of "employee" from the Worker's Compensation Act, § 39-71-118, MCA. Section 50-71-204, MCA. The Worker's Compensation Act defines an "employee," in relevant part, as, "each person in this state, including a contractor *other than an independent contractor*, who is in the service of an employer, as defined by 39-71-117, under any appointment or contract of hire, expressed or implied, oral or written." Section 39-71-118(1)(a), MCA (emphasis added). The Worker's Compensation Act clearly excludes an independent contractor from its definition of an "employee." Based on the plain language of this statute, therefore, we must conclude that MOSHA does not create a duty of safety running from an employer to an independent contractor.

¶21 Here, it is undisputed that McDonald was a licensed independent contractor when Ponderosa hired him to frame the quilt shop. Despite McDonald's descriptions of himself as a subcontractor or sub-subcontractor, the only relevant distinction in the statutes is whether he was an independent contractor, which he admits he was. We therefore conclude that neither Ponderosa nor RTK owed him a special duty of care under MOSHA.

¶22 McDonald seeks to overcome the statutory exclusion of independent contractors from this portion of MOSHA by directing us to a series of prior opinions by this Court. Specifically he cites *Shannon v. Howard S. Wright Constr. Co.*, 181 Mont. 269, 593 P.2d 438 (1979); *Stepanek v. Kober Constr.*, 191 Mont. 430, 625 P.2d 51 (1981); and *Cain v.*

*Stevenson*, 218 Mont. 101, 706 P.2d 128 (1985). He argues that these cases compel us to extend MOSHA to include independent contractors. We will discuss each case in turn and explain why we disagree.

¶23 In Shannon the employee of a plumbing subcontractor sued the owner and general contractor after he was injured while constructing condominium units at Big Sky ski resort when he was forced to reach his second floor work site by an unsecured ladder because the owner and general contractor had refused to install stairs. *Shannon*, 181 Mont. 269, 593 P.2d 438. Our inquiry began with the common law rule that general contractors and owners are usually not liable for injuries to employees of subcontractors. *Shannon*, 181 Mont. at 275, 593 P.2d at 441. We concluded, however, that the general rule did not apply because the owner and general contractor exercised a high degree of supervision and authority over the worksite and in doing so caused the unsafe condition, the lack of stairs, that led to the employee's injury. *Shannon*, 181 Mont. at 281, 593 P.2d at 445.

¶24 The bulk of our analysis in Shannon focused on common law liability rules without reference to MOSHA. Though we stated that the plumbing company and its employee were "independent contractors" for the purposes of our analysis, we did not address this classification with regard to the applicability of MOSHA. *Shannon*, 181 Mont. at 276, 593 P.2d at 442. Our only discussion of MOSHA was in response to the defendants' argument that they did not qualify as "employers" under the then current version of § 39-71-117, MCA, and that the district court had erred by basing a jury instruction on that definition. *Shannon*, 181 Mont. at 281-82, 593 P.2d at 445-46. We

7

did not consider whether MOSHA applied to the plumbers as independent contractors. *Shannon* is not on point with this case.

¶25 *Stepanek* is equally inapplicable. There, we discussed MOSHA only to reaffirm our holding in *Shannon* that MOSHA applies to general contractors, and imposes a duty of safety running from a general contractor to the employees of a subcontractor. *Stepanek*, 191 Mont. at 437-38, 625 P.2d at 55.

¶26 In *Cain* the issue was whether the duty of safety extended to subcontractors themselves, rather than just to subcontractors' employees. We first reaffirmed our holdings in *Shannon* and *Stepanek*. *Cain*, 218 Mont. at 103-04, 706 P.2d at 130. We then reasoned that to draw a distinction between a subcontractor who was employed by another (or incorporated) and a self-employed subcontractor would defy the intent of the legislature, especially given that "the emphasis in Section 50-71-201, MCA, is on the 'place of employment' rather than the status of the worker." *Cain*, 218 Mont. at 104, 706 P.2d at 130-31. We therefore held that the safety duty imposed by MOSHA extended to subcontractors as well as employees of subcontractors. *Cain*, 218 Mont. at 104, 706 P.2d at 131.

¶27 *Cain* is distinguishable from the case at hand for the same reasons that *Shannon* and *Stepanek* are. At no time did we discuss whether independent contractors fall under the definition of "employee" for the purpose of MOSHA. Although the *Cain* Court noted that the electrical subcontractor "furnished his own tools and worked under his own time schedule," the Court never determined him to be an independent contractor and never

discussed the independent contractor exemption in § 39-71-118, MCA. *Cain*, 218 Mont. at 102, 706 P.2d at 129.

¶28 McDonald points out that, despite frequently amending MOSHA since our *Cain* decision, the legislature never directly responded to our holding there, and argues that the legislature ratified our holding through its silence. Even if McDonald is correct that the legislature's silence after *Cain* ratified our holding that MOSHA applies to subcontractors, such a ratification would be irrelevant to the question of whether an independent contractor qualifies as an employee under § 39-71-118, MCA.

¶29 McDonald asks us to "finely parse" his employment status and find that, under the loaned servant doctrine, he was an employee of Ponderosa during the lifting of the wall. The loaned servant doctrine applies when an employer temporarily borrows and exercises control over another's employee. *See Devaney v. Lawler Corp.*, 101 Mont. 579, 56 P.2d 746 (1936). In this case, McDonald had no employer to loan him. As an independent contractor he was responsible for his own work and hours. His decision to help Orell lift the wall was not compelled or requested by an immediate supervisor. The loaned servant doctrine is not applicable to this case.

¶30 No authority cited by McDonald grants relief from the plain language of the statute exempting independent contractors from the status of "employees" under MOSHA. The District Court's ruling that MOSHA did not apply to McDonald is affirmed.

¶31  *2. Did the District Court err when it prohibited testimony related to "rules" in place on a construction site?*

¶32  McDonald contends that the District Court's trial rulings materially affected the fairness of the trial. At Ponderosa's request, the District Court ordered the parties and witnesses to refrain from talking about "rules" governing a construction site. McDonald argues that these rulings led to "absurd moments during trial" and instilled in the jury the sense that any job site involving independent contractors is a hotbed of anarchy where "there are no rules, no one is in charge, no one has responsibility to exercise good judgment, and no one can be held responsible for exercising bad judgment."

¶33  A review of the record belies this claim. After the court determined that MOSHA did not apply, in order to succeed on his remaining claims McDonald needed to convince the jury that either of the defendants breached their duty to use reasonable care, the standard for a negligence action. Due to the absence of any formal safety regulations governing the conduct of the parties, the District Court reasoned that it would be prejudicial to imply that such regulations existed by using terms like "rules" in front of the jury. The court allowed testimony regarding the "duty to use reasonable care," as well as "custom and practice." McDonald's expert was allowed to testify about safety measures he felt Orrell should have used while attempting to lift the wall. In short, nothing in the record indicates that the court's trial ruling caused prejudice sufficient to justify a new trial. The District Court used its discretion to limit the potential prejudicial effect of testimony about hypothetical "rules." The ruling was neither unreasonable nor

arbitrary, and it did not result in a substantial injustice. The District Court is affirmed on this issue.

¶34    *3. Is RTK entitled to fees and costs for being improperly joined as an appellee by Ponderosa?*

¶35    RTK argues that it is entitled to fees and costs because it was unnecessarily joined as a party to this appeal by Ponderosa. RTK bases its position on the fact that it received an unopposed directed verdict at trial, and that, because Ponderosa did not object to the District Court, it cannot now seek to join RTK as a party again.

¶36    Ponderosa acknowledges that it did not object to the directed verdict dismissing RTK from trial, but points out that the dismissal took place after the District Court had ruled that MOSHA did not apply to McDonald. At that point, the only claim remaining against RTK was simple negligence. When, at the conclusion of McDonald's main case, McDonald had not attempted to demonstrate that RTK breached a duty of reasonable care, the dismissal was proper. However, Ponderosa points out that, in the event we agreed with McDonald's position that MOSHA applies to independent contractors, the MOSHA claims against both Ponderosa and RTK would have been resurrected. Therefore, according to Ponderosa, RTK is a necessary party to this appeal.

¶37    We held in *Buck v. Billings Mont. Chevrolet*, 248 Mont. 276, 287, 811 P.2d 537, 544 (1991), that where a plaintiff acquiesced to the dismissal of one of the defendants in the District Court, the plaintiff could not contest that dismissal on appeal. We awarded costs and attorney fees on appeal to the dismissed defendant. *Buck*, 248 Mont. at 287, 811 P.2d at 544. In this case, however, RTK remained a party to the appeal by order of

11

this Court after considering both parties' arguments. Because we previously denied RTK's motion to be dismissed from the appeal, we now deny its request for costs and fees associated with this appeal.

**CONCLUSION**

¶38 The District Court's holding that MOSHA does not apply to McDonald because he is an independent contractor is affirmed. The District Court's evidentiary ruling is likewise affirmed. RTK's request for costs and fees associated with this appeal is denied.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BETH BAKER

Justice Laurie McKinnon, concurring and dissenting.

¶39 I concur with our decision, excepting our failure to award fees and costs on appeal to RTK. The fact that this Court denied RTK's motion to be dismissed from this appeal, in order to have a complete record and full development of the issues, should not be dispositive of RTK's request for fees and costs. RTK has done nothing inconsistent with its request for dismissal or its position taken in the District Court that would warrant denying its request for fees and costs. Ponderosa conceded to the dismissal of RTK in the District Court. Therefore, pursuant to *Buck v. Billings Montana Chevrolet, Inc.*, 248 Mont. 276, 287, 811 P.2d 537, 544 (1991), I would award RTK costs and attorney fees.

/S/ LAURIE McKINNON

12